## Power *against* Barbee and Others.

[Mr. M. C. Johnson for plaintiff: Mr. Owsley for defendants.]

FROM THE CIRCUIT COURT FOR FAYETTE COUNTY.

*May 8.*        Chief Justice ROBERTSON delivered the Opinion of the Court.

The act authorizing sales of the real estate of infants in certain cases, leaves it to the judgment of the guardian of the infant heirs and the enlight-

UPON the petition of Jesse Barbee and wife—the former being the guardian and the latter the mother of Juliann Power and John T. Power, infant children of Thomas Power, deceased—the Circuit Court of Fayette decreed the sale of about thirteen acres of land in that county, which had descended to said infants from their father,

and in which their mother was entitled to dower. The petition urged a sale on the ground that this land was the only estate of the infants, and that a sale of it, being necessary for their maintenance, would be highly conducive to their interests; and *therefore*, the petitioners suggested the propriety of selling it for thirty dollars in hand, and the residue of the price on a credit of five years *without interest!*

In decreeing the sale, however, the Circuit Judge directed that the whole price, except thirty dollars, which was to be paid instantly, should be made payable when the infants should attain *twenty one years of age*, and *without any intermediate interest!* and also, that the guardian should retain the title and possession until payment.

The land having been accordingly sold upon those terms, one Easton, who bought it, executed a bond with approved security for the payment to the guardian (when his wards should become twenty one years old,) of the entire price, except thirty dollars—which, being paid, was applied by the Court as follows—that is, eighteen dollars to an execution against the administrator and heirs of the decedent, and the residue to the payment of the costs of the petition and the fee of the petitioners' attorney.

The infants now seek a reversal of that decree; and the case, anomalous as it must be admitted to be, presents some difficulty.

The object of the statute prescribing the mode of proceeding on petition for the sale of lands descended to infants, was undoubtedly to enable them to make valid sales of such lands, whenever the legal curator should advise and a Circuit Judge should approve.

Subject to these guards, the statute, when not abused, may be deemed remedial and often salutary. The whole procedure is but a statutory mode of sale and conveyance by infants; and being informal and *ex parte*, and depending, as the Legislature evidently intended that it should, chiefly on the judgment of the infants' legal representative and the enlightened discretion of a judge, the revisory power of this Court, if it exist at all, when the record, as in this case, shows that the

---

*Spring Term 1839.*

Power
vs
*Barbee &c.*

ened discretion of a circuit judge, to decide upon the expediency of the sale; and the power of the court of appeals to revise and set aside the proceedings and sale—if it exist at all, when the record shows that the judge had jurisdiction and the proceedings are regular—is confined to cases of palpable abuse; no decree or sale will be set aside merely because this court does not concur with the guardian and circuit judge as to the *expediency* of the sale;—nor even tho' the order of sale may appear to this ct. to have been indiscreet and disadvantageous to the infants. The circuit ct. has authority to direct the application of the proceeds of the sale. The payment of a debt of the heirs, and the expenses of the proceedings, were proper applications of a portion of the proceeds of the sale, in such a case.

Judge had jurisdiction, must be confined to cases of palpable abuse of the confidence or perversion of the trust confided by the statute.  The mere fact that, a sale of an infant's estate, at the instance of the guardian, and with the judicial sanction required by the statute, might not appear to this Court to have been expedient or advantageous, or might even seem to have been indiscreet and disadvantageous, would certainly not authorize us to set it aside.  It was the object, as it is certainly the policy, of the statute to sustain *bona fide* purchases at such sales, whenever fairly made, with the concurrence of the proper Circuit Judge, in a case submitted by the Legislature to his approval and confirmation.  Any other doctrine would make the statute a *felo de se*, as destructive of justice and the repose of titles honestly acquired under legislative authority and assurance, as it would be injurious, instead of being, as intended, beneficial to infants, whose interests *may*, sometimes, be greatly promoted by a prudent exercise of the power delegated by the law to their guardians and the judicial tribunals of the country.

If the *expediency* of the sale of an infant's estate under the statute should be subject to the revision of this Court, at any time within two years after the infant shall have attained twenty one years of age, no just and prudent man would become a purchaser at any such sale, and none but those who would be willing to speculate upon and devour the helpless, would venture to bid, because the risk would generally reduce the price to a sum grossly inadequate.

In this case, the ostensible object of the sale of the land—that is, the maintenance of the infants—does not appear to have been effected, or even provided for; and the credit until the infants attained twenty one years of age, and without any intermediate interest on the price, seems to us rather incongruous and inexplicable.

Nevertheless, the entire proceeding appears to have been regular, and, so far as we could judicially decide, fair, or at least, not apparently fraudulent.  And the Circuit Judge, in decreeing and approving the sale, certified that his decision was the result of "*the most ma-*

" *ture and solemn consideration, as well of the (then) situation* " *and necessities,* as *of the future prospects and advantages* " *of (the) infants.*"

Whatever we might think *prima facie* of such a decree, we cannot reverse it, and set aside the sale, merely because such a credit was given to the purchaser.

Nor does the mother's dower create any embarrassment. She was a party to the petition, and prayed for a sale of the entire tract of land, including her interest. The sale of the whole was decreed and made, and she has not complained.

And, as to the application of the thirty dollars, directed by the Judge, this Court should not, in our opinion, now interfere.

The Judge had authority to direct the appropriation of the proceeds of the sale, and so far as the costs and attorney's fee upon the petition were concerned, we perceive no ground for objecting to the appropriation as made. And if, as suggested by the Judge, there was an execution against the estate of the heirs for eighteen dollars, he might have sanctioned the application of that sum to the payment of that debt.

We may presume that this order was made at the guardian's instance. And we feel inclined even to presume, that one object of the sale of the land was to satisfy that debt.

We are, therefore, brought to the conclusion that, extraordinary as the decree may, in some respects, be considered, we cannot reverse it, or set aside the sale under it.

And therefore, the decree must be affirmed.